UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:14-cr-44-04 |
| | ) |
| JAKE GROSSMAN-CRIST, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER RE:**
**DEFENDANT'S MOTION TO SUPPRESS AND MOTION FOR DISCOVERY**
**(Docs. 55, 56)**

Defendant Jake Grossman-Crist is currently under indictment for conspiring to distribute marijuana and money laundering. The indictment results from an Illinois police stop and search of a trailer destined for Stowe, Vermont that contained 252 pounds of cannabis. The cannabis was seized by the Drug Enforcement Agency ("DEA") in Vermont. Grossman-Crist did not own the trailer or the truck pulling it, nor was he present at the scenes of the stop, search, and seizure. At all times relevant, he was waiting in Vermont for the shipment to arrive. He claims ownership of the cannabis, which was hidden in a compartment beneath a false floor of the trailer.

Grossman-Crist moves the court to suppress the items seized from the trailer's hidden compartment, claiming the seizure violated his Fourth Amendment rights. Grossman-Crist also moves for discovery of all Illinois State Police records concerning the training and performance of the drug-sniffing police dog, K9 Roman, who alerted to the presence of marijuana in the trailer; all records concerning the training and performance of the Illinois State Police trooper who stopped and searched the trailer with regard to working with dogs; and records of Illinois State Police communications concerning the driver's travels during the 72 hours preceding the stop. Grossman-Crist claims that K9 Roman's behavior did not give the Illinois police officers probable cause to search the trailer. The court DENIES Grossman-Crist's motions because it

1

concludes that he had no reasonable expectation of privacy concerning the trailer where the cannabis was secreted.

I.   Facts

The following facts are obtained from the Illinois State Police Report of the traffic stop, search, and seizure; the superseding indictment; and the parties' motions. (Docs. 43, 55, 74, 74-1.)

On March 24, 2014 Illinois State Police Trooper Veryzer stopped the driver of a Ford truck pulling an enclosed trailer on Interstate 80 for the moving violation of following too closely behind another vehicle. (Doc. 74-1 at 7.) The driver owned the truck and the trailer he was pulling. (Doc. 74 at 3.) A drug-sniffing police dog, K9 Roman, was brought to the scene and alerted to the presence of marijuana in the trailer. Officer Veryzer requested that the driver open the rear of the trailer, and the driver complied. (Doc. 74-1 at 8.) The trailer contained a Porsche. (*Id.*) Officer Veryzer, along with Illinois State Police Sergeant Thulen, searched the trailer and discovered it had a false floor above a hidden compartment, after which the officers handcuffed the driver. (*Id.*) Upon prying up a section of the false floor, Officer Veryzer smelled "the overwhelming odor of cannabis" and saw several vacuum-sealed packages containing cannabis buds. (*Id.*) Officer Veryzer placed the driver under arrest for cannabis trafficking. (*Id.*)

The driver informed the officers that he was delivering the trailer and Porsche to Stowe, Vermont in exchange for $25,000. (*Id.*) An Illinois state trooper brought the truck and trailer to the Geneseo Police Department where both underwent a further search. (*Id.*) Both the initial roadside search and the search at the police station occurred without a warrant. (*Id.*)

Following his arrest, the driver cooperated with law enforcement and allowed the DEA in Vermont to monitor his communications with Grossman-Crist, who arranged the marijuana deliveries the driver was planning to make. The Illinois State Police then orchestrated a controlled delivery of the cannabis to its first destination—a Waterbury, Vermont grocery store parking lot on March 25, 2014. (*Id.*; Doc. 74 at 2.) The driver cooperated in this plan. The delivery in Waterbury led to the arrest of Eric Durand and defendant Trevor Burton. (Doc. 74 at

2

2.) The charges against Durand were subsequently dismissed. (Doc. 42.) Burton has pled guilty and is awaiting sentencing. (Docs. 64, 70.)

On March 26, 2014, Grossman-Crist directed the driver to a new delivery location. (*Id.*) The driver cooperated in making a second controlled cannabis delivery, which led to the arrest of Mark Girardi. (*Id.*) The controlled deliveries resulted in the seizure by the DEA of a loaded assault rifle, a .308 caliber rifle, a loaded semiautomatic shotgun, a handgun, two ballistic vests with ceramic plates, and one six-ounce bottle of chloroform. (Doc. 74-1 at 8.) After the controlled deliveries were completed, the false floor of the trailer was removed, and the DEA seized several vacuum-sealed bags containing around 252 pounds of cannabis as well as five pounds of "concentrated cannabis." (*Id.* at 9.) Grossman-Crist was charged with conspiring to distribute marijuana and conducting financial transactions affecting interstate commerce involving proceeds from an unlawful activity (money laundering). (Doc. 43.)

Grossman-Crist moves to suppress the cannabis seized from beneath the floor of the trailer. He claims ownership of the cannabis that was secreted in the trailer's hidden compartment. (Doc. 55 at 4.) He alleges that he placed the cannabis in the trailer himself, that he entrusted the cannabis to the driver for transport to Vermont, and that he expected the cannabis to remain undisturbed until its scheduled delivery in Vermont. (*Id.*) The Government does not dispute these allegations.

## II.   Reasonable Expectation of Privacy Standard

The Fourth Amendment requires that evidence obtained through an unreasonable search or seizure be suppressed. *Maryland v. Macon*, 472 U.S. 463, 467-68 (1985). The Supreme Court in *Rakas v. Illinois*, 439 U.S. 128, 140 (1978), reformulated the inquiry into whether a defendant has "standing" to challenge a search or seizure on Fourth Amendment grounds into a substantive inquiry into "whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it." A defendant may challenge a warrantless search or seizure if the government physically intruded upon a constitutionally protected area of the defendant's, *see United States v. Jones*, 132 S.Ct. 945, 950 (2012), or if the defendant enjoyed a reasonable expectation of privacy in the area

searched. *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring); *Jones*, 132 S.Ct. at 950 (noting that later cases adopted Justice Harlan's analysis).

Whether the defendant had a reasonable expectation of privacy in the area searched without a warrant depends upon two distinct factors. First, the challenger of the search or seizure "must demonstrate a subjective desire to keep his . . . effects private; and, second, the individual's subjective expectation must be one that society accepts as reasonable." *United States v. Paulino*, 850 F.2d 93, 97 (2d Cir. 1988). The defendant bears the burden of showing that he had a reasonable expectation of privacy in the place searched. *United States v. Sparks*, 287 F. App'x 918, 919 (2d Cir. 2008). If the defendant meets this burden, then "the government has the burden of showing that the search was valid because it fell within one of the exceptions to the warrant requirement." *United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993).

A reasonable expectation of privacy has "a source outside the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas*, 439 U.S. at 142 n.12. Society recognizes a lower expectation of privacy in an automobile than in a residence. *United States v. Smith*, 621 F.2d 483, 488 (2d Cir. 1980). In determining whether society would find the defendant's expectation of privacy a reasonable one, "courts generally consider whether the defendant had any property or possessory interest in the place searched or the items seized." *United States v. Mikelic*, No. 3:10-cr-132 CFD, 2011 WL 1837844, at *4 (D. Conn. May 11, 2011). However, ownership of the item seized is not sufficient by itself to create a reasonable expectation of privacy. *United States v. Salvucci*, 448 U.S. 83, 91-92 (1980). "An illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.'" *Id.* (quoting *Rakas*, 439 U.S. at 143). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134.

### III. Analysis and Conclusions

Grossman-Crist argues that the search and seizure of the contents of the compartment beneath the floor of the driver's trailer violated his Fourth Amendment rights because the search

and seizure were conducted without a warrant and without probable cause.[1] (Doc. 55 at 1.) Grossman-Crist contends that he has "standing" to raise the Fourth Amendment claim because, as the bailor and owner of the items seized and as the individual who placed them in the trailer, he had a reasonable expectation of privacy with regard to the seized items. (*Id.*)

The Government responds that Grossman-Crist lacks "standing" to challenge the search of the trailer and seizure of the cannabis because the cannabis was concealed "within a trailer owned by the driver, with the driver's knowledge, as part of a scheme to which the driver was a participant, and was removed with the driver's consent as part of his cooperation with law enforcement." (Doc. 74 at 3.) The Government also argues that Grossman-Crist's motion to suppress and discovery motion are directed at the lack of probable cause to search the trailer when it was stopped on Interstate 80, but that the cannabis was seized on a separate occasion two days later. (*Id.*) Therefore, the Government argues, there is no evidence derived from the initial stop and search to be suppressed, and thus "no remedy available to fit [Grossman-Crist's] request." (*Id.*) Because the Court concludes that Grossman-Crist had no reasonable expectation of privacy in the trailer, it need not address the latter argument.

### A. Grossman-Crist Had No Reasonable Expectation of Privacy in the Trailer

The court finds that Grossman-Crist successfully demonstrates a subjective expectation of privacy in the trailer from which the cannabis was seized. He alleges that he owned the cannabis, placed it himself in the secret compartment in the driver's trailer, entrusted the cannabis to the driver to transport, and "expected [the cannabis] to remain undisturbed until [it] reached Vermont." (Doc. 55 at 4.) *See Paulino*, 850 F.2d at 97 (holding that defendant demonstrated a subjective expectation of privacy where he hid counterfeit bills under a rubber mat beneath his feet in the passenger side of a vehicle); *United States v. Roy*, 734 F.2d 108, 110 (2d Cir. 1984) (concluding defendant's act of locking weapons and other items in the trunk of a Subaru manifested subjective expectation of privacy).

Grossman-Crist has failed to show, however, that his expectation of privacy was reasonable. Various factors derived from property law and societal customs weigh against him.

---

[1] At the hearing on December 1, 2014 Grossman-Crist clarified through his attorney that he does not challenge the initial stop itself.

Grossman-Crist owned neither the truck that was stopped nor the trailer attached to it. He therefore had no authority to exclude others from the trailer or its hidden compartment. *See Perea*, 986 F. 2d at 639-40; *United States v. Soule*, 908 F.2d 1032, 1036 (1st Cir. 1990); *Paulino*, 850 F.2d at 97; *Smith*, 621 F.2d at 487; *United States v. Galante*, 547 F.2d 733, 739 (2d Cir. 1976); *Mikelic*, 2011 WL 1837844, at *4 (all analyzing, *inter alia*, defendant's ownership interest and ability to exclude or control access to premises searched in finding no reasonable expectation of privacy). Nor was Grossman-Crist present at the scene of the search he challenges or at the scene of the seizure. *See Soule*, 908 F.2d at 1036; *Smith*, 621 F.2d at 487; *Galante*, 547 F.2d at 739 (all finding defendant's absence from the scene of the search a factor militating against a reasonable expectation of privacy in the premises searched).

Additionally, the "purely commercial nature of the transaction" between Grossman-Crist and the driver and the "fleeting and insubstantial connection" Grossman-Crist had with the trailer weigh against finding that Grossman-Crist's expectation of privacy was reasonable. *Minnesota v. Carter*, 525 U.S. 83, 91, 102, (1998); *see also Rawlings v. Kentucky*, 448 U.S. 98, 104-06 (1980) (stating that petitioner who stuffed drugs in the purse of an acquaintance of three days had no reasonable expectation of privacy in it); *Paulino*, 850 F.2d at 97 (noting fact that defendant only knew automobile owner for one week weighed against finding reasonable expectation of privacy in the automobile); *cf. United States v. Eldridge*, No. 09CR329A, 2012 WL 2131890, at *4 (W.D.N.Y. June 12, 2012) (finding that defendant had reasonable expectation of privacy in girlfriend's residence in which he stored personal property while he was incarcerated where he was in a committed relationship with the resident of the address; he used the storage address as his mailing address; and he intended to reside at the storage address when he got out of prison).

The one factor weighing in Grossman-Crist's favor is his asserted and uncontested ownership of the cannabis. Although privacy—and not property rights—provides the basis for "standing" under current Fourth Amendment jurisprudence, the Supreme Court continues to recognize that ownership and lawful possession of premises, vehicles and other places may provide the basis for a reasonable expectation of privacy. *See Oliver v. United States*, 466 U.S. 170, 190 (1984) ("[P]roperty rights reflect society's explicit recognition of a person's authority to act as he wishes in certain areas.") (quoting *Rakas*, 439 U.S. at 153 (Powell, J., concurring)) (internal quotations omitted). As any child who has learned to shut the bathroom door

understands, the right to exclude others is where privacy begins. But ownership of an object which is no longer in one's possession has never been sufficient by itself to establish an expectation of privacy. *See, e.g., United States v. Lisk*, 522 F.2d 228, 231 (7th Cir. 1975) (holding that owner of an explosive device hidden in the trunk of someone else's car lacked standing to object to a search of the car).

A reasonable expectation of privacy requires more than a general hope of evading detection by law enforcement. *See Rawlings*, 448 U.S. at 105 ("Had petitioner placed his drugs in plain view, he still would have owned them, but he could not claim any legitimate expectation of privacy."); *Galante*, 547 F.2d at 739 ("One who conceals contraband or stolen goods on the premises of another does not thereby acquire an interest in those premises."). As the Supreme Court explained in *Katz*, 389 U.S. at 353, "the Fourth Amendment protects people—and not simply 'areas'—against unreasonable searches and seizures . . . ." In the case of vehicle searches, the people most obviously protected are owners, drivers and to a lesser degree other occupants. No case, however, extends this protection to absent owners of contraband or other evidence of crime who lack any other basis for an expectation of privacy in the area searched.

Grossman-Crist specifically argues that he derived a reasonable expectation of privacy from his status as bailor of the cannabis, and he cites *United States v. Perea* in support of this proposition. (Doc. 55 at 1.) In *Perea*, however, the Second Circuit held that a *bailee* had a protected privacy interest in the bailed item by virtue of his right and duty "to exclude others from possession of the property entrusted to him." 986 F.2d at 640. *Perea* was silent on the privacy interest of a bailor. *See also Eldridge*, 2012 WL 2131890, at *1 ("*Perea* does not discuss the Fourth Amendment rights of bailors."); *United States v. Miller*, No. 96 Civ. 0412, 1997 WL 109565, at *2 n.2 (S.D.N.Y. Mar. 12, 1997) ("*Perea* stands only for the proposition that bailees—not bailors . . . can have sufficient interest in bailed property to give them standing to make a Fourth Amendment challenge."). Grossman-Crist's status as bailor, therefore, is insufficient to give him a reasonable expectation of privacy in the driver's trailer. *See also United States v. Sullivan*, 544 F. Supp. 701, 714 (D. Me. 1982), *aff'd*, 711 F.2d 1 (1st Cir. 1983) ("[W]here restrictions on access are neither imposed by the bailor nor fairly inferable from the surrounding circumstances, courts have held that the bailor assumed the risk that the bailee might consent to a governmental search.").

Although extending Fourth Amendment protections to bailors as well as to bailees has the appeal of symmetry, this case illustrates the very different expectations of privacy which the court can reasonably attribute to each. As the only person in possession of the trailer and the drugs at the time of the roadside stop, the driver plainly had "standing" to challenge every aspect of his interaction with the Illinois State Police, including the initial stop, his arrest, the initial search of the trailer, and the subsequent search at the barracks. He also had authority to consent to a search. His expectation of privacy is derived less from the bailment—the legal relationship between himself and Grossman-Crist—than from his ownership of the trailer, his presence at the stop and roadside search, and his possession of the contraband.

In contrast, the basis on which Grossman-Crist as bailor may claim a reasonable expectation of privacy is much thinner. He owned the cannabis and obviously did not wish it to be discovered because he helped to conceal it beneath the trailer's false floor. But then he left the vehicles and the contraband in the driver's care. He retained a proprietary interest as owner but no possession or control of the cannabis during its trip across the United States. He was not present at the stop. If contacted, he could not have consented to the search since he neither owned nor occupied the vehicles involved.

Grossman-Crist is situated most similarly to the defendants in *Galante*, 547 F.2d 733, *Paulino*, 850 F.2d 93, and *Rawlings*, 448 U.S. 98, who failed to establish a reasonable expectation of privacy in premises or vehicles which they did not own and which they used to hide contraband or stolen merchandise. *See also United States v. Symonevich*, 688 F.3d 12, 21 (1st Cir. 2012) ("[E]ven if [defendant] had demonstrated a possessory interest in the can [containing heroin], that interest would not establish a reasonable expectation of privacy in the space beneath the passenger seat."); *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005) (holding that defendant who "claimed ownership" of a gun that he hid in a car in which he was a passenger had no reasonable expectation of privacy there). Hiding the cannabis inside the driver's trailer did not, by itself, give Grossman-Crist a reasonable expectation of privacy there; "a legitimate expectation of privacy by definition means more than a subjective expectation of not being discovered." *Rakas*, 439 U.S. at 143 n.12.

Grossman-Crist also points to *United States v. Johns*, 707 F.2d 1093 (9th Cir. 1983), in contending he had a reasonable expectation of privacy with regard to the cannabis in the trailer's

8

hidden compartment. (Doc. 55 at 4.) In *Johns*, the Ninth Circuit upheld the district court's finding that defendant pilots who delivered marijuana in packages had "standing" to object to a later search of those packages "because they shared a bailor-bailee relationship with the other . . . defendants." 707 F.2d at 1099.  However, this proposition evolved into the "coconspirator exception" to the rule regarding who may challenge the constitutionality of a search or seizure, and the Supreme Court rejected that exception as inconsistent with its prior holdings. *United States v. Padilla*, 508 U.S. 77, 78 (1993); *see also United States v. Padilla*, 111 F.3d 685, 687 (9th Cir. 1997) (explaining after remand that the *Johns* holding "was premised on the very coconspirator exception rejected by the Supreme Court").

Because Grossman-Crist has failed to demonstrate that he had a reasonable expectation of privacy in the trailer, the search of the trailer and subsequent seizure of the cannabis from its hidden compartment did not violate Grossman-Crist's Fourth Amendment rights, and his motion to suppress is denied.

### B.    The Items Requested for Discovery are Not Material to Grossman-Crist's Defense

Grossman-Crist moves for discovery under Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure of the Illinois State Police records related to the training and performance both of K9 Roman and of Trooper Veryzer in using drug-sniffing canines. Grossman-Crist desires discovery of these items to support his motion to suppress the cannabis. (Doc. 56 at 2.) Because the court concludes that the search and seizure of the cannabis did not violate Grossman-Crist's Fourth Amendment rights, these items are not material to preparing his defense.  *See* Fed. R. Crim. P. (16)(a)(1)(E)(i) (allowing for discovery of items "material to preparing the defense").  Grossman-Crist does not indicate how the requested items would otherwise be useful to either counter the Government's case or bolster his own defense, and the court finds no such materiality.  *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) ("Evidence . . . is material if it could be used to counter the government's case or to bolster a defense; information not meeting either of those criteria is not to be deemed material within the meaning of the Rule . . . ."); *United States v. Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004) ("It is [the] defendant's burden to make a prima facie showing that the documents sought are material to preparing his defense.").

9

Grossman-Crist also moves for discovery of the Illinois State Police communications regarding the driver's whereabouts preceding the stop of the driver on I-80. He requests discovery of these items out of concern that Trooper Veryzer's stated reason for stopping the truck driver—following too closely—was not accurate. He believes that Veryzer in fact stopped the truck due to a tip from a "quasi-law enforcement intelligence network." (*Id.* at 3.) However, the court has concluded that the stop and search of the trailer and the seizure of the cannabis did not violate Grossman-Crist's constitutional rights, and he therefore cannot challenge the stop of the truck driver. These items are thus not material to preparing his defense. Nor will the court allow for discovery of these items merely to determine, as Grossman-Crist urges (Doc. 56 at 3), whether Veryzer's stated reason for stopping the driver was accurate.

Grossman-Crist's motion for discovery under Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure is therefore denied. This ruling does not impair Grossman-Crist's right to discovery of materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), or *Giglio v. United States*, 405 U.S. 150 (1972), or of items that the Government plans to use in its case-in-chief pursuant to Rule 16(a)(1)(E)(ii).

## CONCLUSION

For the reasons stated above, Grossman-Crist's motion to suppress the items seized from the trailer and his motion for discovery are DENIED.

Dated at Rutland, in the District of Vermont, this 22nd day of December, 2014.

Geoffrey W. Crawford, Judge
United States District Court

10